## Lefevre's Estate.

*Executors and administrators—Charge on land—Payment of debts.*

Where a testator devises land charged with the payment of two legacies to a nephew, and devises other land to a niece subject to a mortgage which the executors might make to raise moneys necessary to make up any deficiency in the general fund of the estate, and the nephew mortgages his land, and the executors sell the mortgage, and use the proceeds not to pay legacies, but to pay the debts of the estate, the legatees are entitled to have the executors surcharged with the amount of their legacies. The executors, however, are entitled, although their account has been confirmed, to create a mortgage upon the land devised to the niece to reimburse themselves for the amount of the surcharge.

Argued May 20, 1901. Appeals, No. 128, Jan. T., 1895, and No. 131, Jan. T., 1899, by George Witmer and Sarah Leaman, from decree of O. C. Lancaster Co., overruling exceptions to auditor's report in the Estate of Christian H. Lefevre, Deceased. Before McCOLLUM, C. J., MITCHELL, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to report of A. F. Hostetter, Esq., auditor.
See Lefevre's Estate, 171 Pa. 404, and 193 Pa. 225.

The auditor reported the facts to be as follows:

Christian H. Lefevre died on January 26, 1890, leaving a last will and testament, which was duly proven, and upon which letters testamentary were granted to Henry C. Harner, John A. Charles and John L. Miller, the executors named therein.

Almost the whole of Mr. Lefevre's property, at the time of his decease, was in the shape of real estate, which was all specifically devised in the will to various persons, and none of which was sold by the executors. Various articles of personal property, and certain moneys, were also specifically bequeathed by him.

By the twenty-seventh item of his will he directs the collateral inheritance tax on his entire estate to be paid out of the general fund of his estate, not specifically bequeathed or devised. As this item of the will is of great importance in the present contention, it is here reproduced in full:

"Twenty-seventhly.—I order and direct that the collateral tax upon my entire estate, embraced in my foregoing last will and by any codicils which may be attached thereto, including that of the articles bequeathed to the nephews and nieces of my deceased wife, Martha E., in and by the second item of this, my last will and testament, shall be paid by my executors hereinafter appointed, as soon after my decease as practicable, out of the general fund of my estate not specifically bequeathed or devised. And in case the said fund should not be sufficient for the payment of my just debts, the expenses of administration and the cost of gravestones, which I direct my executors to procure and have them properly placed, then I do authorize and empower the executors of this, my last will, to raise whatever moneys may be necessary to make up such deficiency and enable them to carry out this item of my last will, by mortgaging the east end tract of my said farm in Strasburg township, as directed to be laid off by the twenty-fourth item of this, my last will, for such sum as may be required. The said moneys thus raised to pass into the general fund or residue of my estate, to be applied as above set forth. Provided, however, that the said mortgage shall be executed under the direction of the Orphans' Court of Lancaster county, Pennsylvania, upon a showing made to them by the executors of the assets in hand and the sum probably required, and after due notice to Mrs. Sarah Leaman, devisee of the said east end or division of said farm, to determine and decree the minimum amount for which the said east end tract or division may be mortgaged; and thereupon the executors, for the purpose of securing the person or persons advancing the money, shall have full power to

execute a mortgage or mortgages on said east end tract or division of my said farm, for any sum required not exceeding the amount fixed by said court, with like force and effect as I could myself have mortgaged said premises if living."

The farm referred to in the foregoing (twenty-seventh) item of the will is more fully described in the twenty-fourth item of the will, by which it is devised to Mrs. Sarah Leaman:

" Twenty-fourthly.—The east end or larger part of my farm in Strasburg township, in said county of Lancaster and State of Pennsylvania, bounded on the south by land of Benjamin Brenaman, deceased, on the east by land of Jacob L. Ranck, on the north by land of my nephew, George N. Lefevre, and on the west by Nolt, my said farm being now occupied by Benjamin M. Mowery. Sixty acres of my said farm as herein directed to be cut off, viz.: of the entire width of my said farm to be laid off by a line to be run clear across my said farm, parallel with the line of the east end of my said farm, so as to cut sixty acres off the east end of my said farm, I do give, subject to a mortgage upon which the executors of this, my last will and testament, are hereinafter authorized and empowered to raise whatever (monies) moneys may be necessary to make up any deficiency in the general fund of my estate, as specified in the twenty-seventh item of this, my last will, and subject to the payment of the money secured by said mortgage, I do give and devise the said east end tract of my said farm, being sixty acres as thus laid off, with the farm buildings, improvements and appurtenances, unto my niece, Mrs. Sarah Leaman, née Buckwalter, wife of my friend, Henry Leaman, for and during her life, with remainder to her children, being her heirs, then living, and the heirs of such as may be dead in fee simple."

Mr. Lefevre died without wife or children surviving him, and as the bequests and devises of his will are all to collateral relatives or strangers, his entire estate was subject to collateral inheritance tax.

The inventory and appraisement filed by the executors showed the entire personal estate left by Mr. Lefevre to be of the value of $2,652.22. This, however, included certain articles and moneys which were specifically bequeathed, and which did not, therefore, form part of the general fund of the estate, out of

which he had directed his debts, collateral tax, gravestones and costs of administration to be paid.

The executors, on February 14, 1891, filed their final account, in which they accounted for all the personal property received by them, and credited themselves with the distribution of the articles included in their inventory, which were specifically bequeathed, and with the payment of the debts of decedent, the collateral inheritance tax on the entire estate, tombstones for decedent, and the costs of administration. The account showed a balance due the executors of $752.98. This account was confirmed in due course by the orphans' court. Subsequently, on petition, the court allowed the executors to mortgage the farm devised to Mrs. Sarah Leaman, in accordance with the twenty-fourth and twenty-seventh items of the will, for $801.98, and in this manner the money was raised to reimburse the executors for the balance of $752.98, shown by their account to be due them, and for $49.00 afterwards expended by them. This mortgage is still a subsisting lien on Mrs. Leaman's farm. With the filing and confirmation of their account the executors considered the debts and liabilities of Mr. Lefevre's estate all paid, except as to the balance shown to be due them for moneys advanced to do this ; and when they were reimbursed this balance out of the proceeds of the mortgage put on Mrs. Leaman's farm, the estate appeared to be closed.

Included, however, in the moneys for the receipt of which the executors had charged themselves in their account was the sum of $5,000, which had been raised out of the decedent's real estate, situated on the northeast corner of North Queen and Orange streets, in Lancaster city. This was devised in the twenty-second item of the will to Franklin P. Lefevre, in trust, "subject to the payment to my estate of the sum of $5,000 within six months from the time of my decease." Instead of paying this money in cash to the executors, Franklin P. Lefevre gave them a mortgage for $5,000 on the property, which they sold and thus realized for the estate $5,000. This money the executors had been advised was part of the general fund of the estate, applicable to debts, etc. They accordingly applied the whole of it toward paying debts, the collateral inheritance tax ordered by the testator to be paid, etc., and took credit for these moneys thus expended in their account. After using all

these moneys, besides what other personal estate came into
their hands, it still required an advance of $752.96 of their
own money to fully meet the claims against the general fund
of the estate, and in this way their account showed the balance
of $752.96 due them, for which they were subsequently reim-
bursed out of the mortgage of Mrs. Leaman's devise.

Had matters remained in this situation, the liabilities of the
estate would, of course, all have been discharged, and the pres-
ent contention would not exist.

Subsequently, however, to the final confirmation of the exec-
utors' account and the mortgage of the Leaman farm, George
Witmer and Mrs. Martha Shertz presented their petition to
the orphans' court of Lancaster county setting forth that the
$5,000 which had been raised by the executors out of the
Franklin P. Lefevre property, was not property applicable to
the payment of debts, collateral inheritance tax and expenses
of the estate, but was payable as a pecuniary legacy to them,
and had, therefore, been wrongly appropriated by the executors.
The orphans' court ruled against this contention, but on ap-
peal the Supreme Court sustained this view and ordered the ex-
ecutors surcharged with these moneys: Lefevre's Estate, 171
Pa. 404.

Your present auditor, sitting under appointment to restate
the executor's account in accordance with this opinion of the
Supreme Court, surcharged the executors with $5,000 and in-
terest, as a special fund in their hands, applicable to the legacy
given to George Witmer and Mrs. Shertz.   Having thus been
surcharged for the benefit of Mr. Witmer and Mrs. Shertz, with
the moneys which they had received from the Franklin P. Le-
fevre property and had expended in paying claims against the
estate, the executors were thus left in the position of being
compelled to advance their own moneys pro tanto for the pay-
ment of Mr. Lefevre's debts, and the collateral tax on his de-
vises.

Since the confirmation of the last auditor's report thus sur-
charging the executors, the orphans' court has by execution
actually compelled them to pay what was due on the Witmer
and Shertz legacy at that time, and on April 6, 1897, the ex-
ecutors paid Mr. Witmer and Mrs. Shertz $4,910.   This pay-
ment was in full discharge of all the annual instalments of

principal due on the legacy up to January 26, 1897, and also of the interest due on the entire legacy of $5,000 up to January 26, 1897. There now remain due three instalments of principal of $500 each, payable respectively on January 26, 1898, 1899 and 1900, with interest thereon at four per cent from January 26, 1897. When the executors have paid these remaining instalments, they will then have paid in all to Mr. Witmer and Mrs. Shertz, $6,530. Although they have not yet actually paid the unmatured instalments of principal amounting to $1,500, they stand now surcharged with them by the confirmation of the former auditor's report and are, therefore, under personal liability to pay them when due, and while not formally surcharged in the former auditor's report with interest on the legacy beyond January 26, 1896, the confirmation of that report, based on the decree of the Supreme Court, fixes their liability also for the whole of this interest as it becomes due. They have, therefore, now paid or become personally liable to pay the whole of this legacy and interest, amounting to $6,530. They may, therefore, be said to have relieved the estate with their own moneys, and are in consequence entitled to be reimbursed by the estate these $6,530.

In order that they may be made entirely whole, they must, however, also be paid by the estate interest from the time of its payment on the moneys ($4,190), which they have actually now paid out on account of this legacy. As to the unpaid instalments, if they are now put in funds by the estate to meet these, and the interest on them when due, they will be protected as to that part of the surcharge. But as to what they have already paid they are entirely out of pocket and it will not be sufficient that they be simply repaid the moneys which they have advanced; they are in addition entitled to interest on these moneys from the time when they paid them up to the time when they are repaid by the estate. The interest on the $4,910 paid by them would amount, on August 21, 1897, the date of filing this report, to $110.47, and this amount will be added to the $6,530. already found to be due them from the estate. When the order to mortgage, which is hereafter recommended, comes to be made, if it is made, it should, however, include in addition to what is here found due the executors, interest on $4,910 from August 21, 1897.

We think there is no room whatever for question that the estate is liable to repay the executors the principal of the legacy with which they have now been surcharged for the benefit of Mr. Witmer and Mrs. Shertz. These moneys were used to pay Mr. Lefevre's debt, and now that the executors are obliged to repay them to the legatees, his debts have for the time being been paid with the executors' own money, and the estate now owes them to the executors. That the executors should be left in the position of having paid Mr. Lefevre's debts and the collateral tax out of their own money, while a large estate left by him would thus pass to his legatees and devisees, clear of his debts and the tax on these legacies and devises would be too manifesty unjust to need argument.

We think, however, that the executors are in like manner entitled to be reimbursed by the estate for the interest which they are obliged to pay Mr. Witmer and Mrs. Shertz on their legacy, for the time during which it has been withheld from them. The estate and not the executors personally has had the use during this time of their $5,000 legacy. If the executors had not had this in hand, they would have been obliged, at the very outset, to raise this amount out of the rest of the estate, and in that case whichever of the beneficiaries under the will would have had to contribute, would have lost the use which they had otherwise had up to this time of so much of their devises as would have been required for this purpose. There is, therefore, no injustice but exact equity in requiring the estate now to reimburse the executors for the interest which they are compelled to pay Mr. Witmer and Mrs. Shertz for the use up to this time of their legacy, and also in reimbursing the executors by interest for the use of their own money which they have now advanced to repay the principal and interest of the Witmer and Shertz legacy thus far used for the purposes of the estate.

If the executors had, in the beginning of their administration, advanced their own moneys instead of using this $5,000 legacy to pay debts, they would now be entitled to interest from the estate on the whole $5,000 from that time to the present. It was on this theory that a credit of $1,617.50 was allowed them in the restatement of their account in the former audit by the present auditor, and a balance of $6,617.50 found due them in

that account. Although no exception was taken to that finding, and no error in regard to it has been suggested to us in the present audit, we are now of the opinion, upon a reconsideration of the whole matter, that the liability of the estate to the executors does not extend so far as the balance then found. That balance was found on the theory that the executors had paid $5,000 of Mr. Lefevre's debts, and were hence entitled to interest on that payment. But as a matter of fact they did not really lay out their own money until now that they have been obliged to pay Mr. Witmer and Mrs. Shertz their legacy. All that they can ask is to be saved from loss, and when they are now repaid the $4,910 already paid by them, with interest from its payment, and have had placed in their hands in addition a sufficient sum to meet, when it becomes due, the balance with which they are surcharged, and such interest as will be due on it, we think they are made whole, so far as the surcharge on account of the $5,000 legacy goes. For this reason we shall fix the liability of the estate on account of this legacy at $6,640.47 and such interest as may accrue after August 21, 1897, as heretofore fully explained, instead of on the basis found in the former auditor's report.

In our former auditor's report the cost of the first audit, as the costs on appeal to the Supreme Court, aggregating $161.38, and also the costs of the former audit by the present auditor, amounting to $68.34, were surcharged against the executors, and for the reasons set forth in that report, the executors are entitled to recover these from the estate. For the same reason the costs of the present audit are chargeable also to the estate. These amount to $143.15, and together with the $161.38 and $68.34 heretofore referred to, will be added to the liability found on account of the legacy, thus making an aggregate of $7,029.56, for which the estate is liable to the executors, and for which a mortgage will be hereinafter recommended.

The court dismissed exceptions to the auditor's report, and entered a decree authorizing the executors to execute a mortgage on Mrs. Leaman's land.

*Error assigned* was in overruling exceptions to auditor's report.

*John M. Groff*, with him *A. O. Newpher*, for George Witmer.

*W. U. Hensel,* for Sarah Leaman.

*John W. Appel,* with him *H. M. Houser,* for Franklin P. Lefevre.

*H. M. North,* with him *A. O. Newpher,* for executors of C. H. Lefevre, deceased.

OPINION BY MR. JUSTICE MITCHELL, October 11, 1901:

This case has had more than ordinary consideration, partly from the inherent difficulty of any construction of the will which will be entirely satisfactory, and partly because no result can be reached which will not produce apparent hardship to some of the parties.

The reargument was granted because Mrs. Leaman's interests might be affected and not being party to the first appeal she had not been heard. See 193 Pa. 225. But the full hearing of all parties has failed to convince us that there is any better construction than was reached when the case was first here, 171 Pa. 404. The opinion then filed establishes that the $5,000 legacy was payable to Witmer and Mrs. Shertz, and that it was not a second charge of that amount on the Queen street house devised to Franklin Lefevre. The reasons need not be repeated here.

The result is that Mrs. Leaman or the executors must lose the amount of $5,000 produced by the mortgage of Franklin Lefevre. The money should have been paid directly to Witmer and Mrs. Shertz, but the executors used it in paying the debts of the estate, and were therefore surcharged with the amount in favor of Witmer and Mrs. Shertz. If they had paid it to those legatees in the first instance, they would have had to raise the money for the debts from the estate, and the will specifically designates the farm devised to Mrs. Leaman as the source from which money to pay debts, etc., was to be raised. The effect of the application of the mortgage money in either way therefore is exactly the same. The executors are not barred by the fact that their account was called, and was supposed to be final. If a new debt of the estate had been brought forward, the executors would have had to meet it, and to reopen the administration of the estate for that purpose. The claim

of the legatees was equivalent in its effect, and the executors having paid it are in the same position as if they had done so out of the proceeds of the mortgage, and paid the debts out of their own pockets. They are entitled to be reimbursed.

The result is unfortunate for Mrs. Leaman, for it apparently reduces the devise to her to an empty shell. But this is a consequence of the testator's express direction. He either overestimated the value of the farm, or underestimated the amount of his debts. Whichever it was, it is clear that he devised the farm charged with any deficiency of cash for the other purposes of the will, and Mrs. Leaman can only take what is left. Her situation in this respect is no worse than it would have been if the administration had been strictly in accordance with the legal requirements of the will, and the money to pay the debts had been raised by mortgage on her farm in the first instance.

Decree affirmed.